```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
ROLAND J. DE FRIES,                                               :
                                                                  :
                          Plaintiff,                              :
                                                                  :
          -v-                                                     :
                                                                  :
                                                                  :
PETER ZANDER PHOTOGRAPHY and GETTY                                :
IMAGES (U.S.), INC.,                                              :
                                                                  :
                          Defendants.                             :
                                                                  :
------------------------------------------------------------------X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/07/2013
```

12 Civ. 5967 (KBF)

MEMORANDUM DECISION
& ORDER

KATHERINE B. FORREST, District Judge:

On July 3, 2012, plaintiff Roland J. De Fries filed a complaint in New York state court against defendants Peter Zander Photography and Getty Images (US), Inc., asserting copyright infringement as well as numerous other claims. (ECF No. 1.) On August 3, 2012, defendants removed that complaint to this Court. (Id.) On May 14, 2013, plaintiff filed an amended complaint that added further allegations. (ECF No. 34.)

On June 7, 2013, defendants moved to dismiss plaintiff's complaint. (ECF No. 39.) On September 12, 2013, after receiving further submissions from defendants, the Court converted defendants' motion to dismiss into one for summary judgment. (ECF No. 53.) For the reasons set forth below, defendants' motion is GRANTED.

## I.     BACKGROUND

A. Factual Background

Because of the procedural posture of this motion for summary judgment, defendants did not file a statement of material facts pursuant to Local Civil Rule 56.1. However, because defendants' motion cites plaintiff's amended complaint for its factual history, the Court views those facts as undisputed. The Court also views the factual statements in defendants' submissions that plaintiff has not contested, as well as the statements in plaintiff's submissions that defendants have not contested, as undisputed.[1]

Sometime before July 2008, Peter Zander, owner of defendant Peter Zander Photography, approached plaintiff in order to take photographs at plaintiff's weekend home for a project titled "Portraits of Manhattan families who have second homes in New England and Upstate New York." (Am. Compl. ¶ 4, ECF No. 34.) According to plaintiff, Zander told him that the photos were for strictly non-commercial, non-public use, without exception. (Id.)

In July 2008, Zander went to plaintiff's weekend home and took pictures of the property, defendant, and defendant's son and wife. (Am. Compl. ¶ 5.) Plaintiff alleges that "[n]o model or property releases were signed during or before the photoshoot, nor did it seem necessary given the strictly non-commercial, non-public

---

[1] The Court notes that plaintiff's submissions contain certain conclusory factual assertions that conflict with the facts supported by sworn declarations submitted by the defendants. Even on a motion for summary judgment, the Court need not treat factual allegations as true when they are entirely contrary to the weight of the evidence. See Jeffreys v. City of New York, 426 F.3d 549, 551 (2d Cir. 2005) (explaining that a district court may disregard evidence, even on summary judgment, when "no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in [plaintiff's] complaint").

nature of the project." (Id.)  Plaintiff acknowledges that, sometime before May 2011, defendants acquired possession of four model and property releases involving photographs from the photo shoot.  (Am. Compl. ¶ 12.)

At some point in time, plaintiff's wife, Astrid De Fries, discussed with Zander the possibility that he would obtain model and property releases for the photo shoot. (De Fries Decl. ¶ 8, ECF No. 58.)  According to Zander, that discussion occurred on the same day as the photo shoot, when plaintiff's wife offered to sign such releases. (Zander Decl. ¶ 5, ECF No. 58.)  Zander then waited about a month before sending four releases to plaintiff's wife: model releases for each of plaintiff, plaintiff's wife, and their child, and a property release for their home.  (Zander Decl. ¶¶ 5–6.)

Plaintiff's wife signed and returned the releases. (De Fries Decl. ¶ 10–12; Zander Decl. ¶ 5–6.)  According to a declaration submitted in support of defendants in this case, plaintiff's wife swears that she signed the releases with plaintiff's permission on behalf of plaintiff and the family. (De Fries Decl. ¶ 11.)  Plaintiff's wife further states that she discussed signing the releases with plaintiff and received his authorization to sign on his behalf prior to signing them.  (Id.) Plaintiff's wife signed the releases on October 30, 2008, and sent them to Zander, who verified that they were correctly and fully completed.  (De Fries Decl. ¶ 11–12; Zander Decl. ¶ 5–6.)

Several years passed.  On March 20, 2011, plaintiff learned that the images from the photo shoot were posted on defendant Getty Images' website and offered as "royalty-free" images, thereby permitting worldwide, restriction-free use of the

3

images in exchange for a preset fee. (Am. Compl. ¶ 6.) The images available on defendant's website depict what plaintiff describes as "personal intimate settings." (Am. Compl. ¶ 7.)

Plaintiff claims that, after discovering the images, he attempted numerous times to inform defendants via email and telephone that the images were being used illegally and without release forms or permission. (Am. Compl. ¶ 8.) In April 2011, plaintiff learned from defendants that Getty Images' website was selling the images for various uses, including digital media, Web use, advertising, and corporate clients. (Am. Compl. ¶ 9.) The images were still available online on May 14, 2013, the date of his amended complaint. (Am. Compl. ¶ 13.)

In May 2011, defendants produced the model and property releases to plaintiff. (Am. Compl. ¶ 12.) Plaintiff's amended complaint alleges that these releases are forged because the date on the releases—October 30, 2008—differs from the July 2008 shoot date, because the date on which the electronic files were created was June 1, 2010, and because the signatures (of his wife) were forged. (Am. Compl. ¶ 12.) In a later submission on this motion, plaintiff reiterates his allegation that the releases were forged, but this time focuses on the fact that they do not contain <u>his</u> signature. (Oct. 7, 2013 Letter from Roland De Fries ("De Fries Letter") 4.)

Plaintiff claims that defendants' use of the photographs has caused distress and damage to his health, well-being, character, reputation, family, and business. (Am. Compl. ¶ 14–15.) Plaintiff also claims that these events causally led his

marriage to end in divorce and led him to suffer "great financial loss, hardship and physical, psychological and inter-personal harm and distress." (Am. Compl. ¶ 11.) Plaintiff asserts that defendants' actions are the cause of or contributed to his suffering a nervous breakdown on April 15 and 16, 2011, and to the fact that he has been referred for therapy. (Id.)

  B. <u>Procedural History</u>

On July 3, 2012, plaintiff filed his initial complaint in the Supreme Court of the State of New York, New York County, denominating one of his claims as "copyright infringement"; he also included many other claims in that filing. (ECF No. 1.) Defendant Peter Zander Photography removed the action to this Court. (Id.) On January 10, 2013, the Court noted that it appeared that plaintiff had not pled a proper claim for copyright infringement—indeed that he alleged no copyright of which he was the owner that had been infringed, but rather a state-law claim for an invasion of the right to publicity. (<u>See, e.g.</u>, ECF No. 18.) The Court suggested an amendment and explained the process in some detail. After initially failing to timely comply with this Court's Orders to file an amended complaint, plaintiff did so on May 14, 2013. (<u>See</u> ECF Nos. 18, 30.)

Plaintiff's now-amended complaint primarily continues to allege that there has been some form of "copyright infringement"—but again fails to allege any copyright of which he is owner or any infringement. The amended complaint also asserts a variety of claims denominated as infliction of emotional distress; forgery; damage to plaintiff's health and well-being; damage to plaintiff's family; damage to

plaintiff's business; lying for monetary and personal gain; fraud; breach of contract; and unauthorized sale and publication of personal images.  (ECF No. 1.)[2]  The amended complaint also adds three new claims denominated as: theft of intellectual property; violations of the right to privacy; and intentional infliction of emotional distress.  (ECF No. 34.)

On June 7, 2013, defendants moved to dismiss plaintiff's amended complaint for failure to state a claim pursuant to Rule 12(b)(6).  (ECF No. 39.)  Plaintiff opposed that motion on July 16, 2013.

On September 12, 2013, after receiving further submissions from defendants related to the model and property releases, the Court provided the parties with notice that it was sua sponte converting defendants' motion to dismiss into a motion for summary judgment.  (ECF No. 53.)  The Court allowed the parties to make any additional factual submissions they deemed appropriate. (Id.) Plaintiff submitted a letter related to the model releases on October 7, 2013.

## II.   STANDARD OF REVIEW

Summary judgment may not be granted unless "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party (here, in the context of this converted motion to dismiss, the defendants) bears the burden of demonstrating "the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On summary judgment, the Court must "construe all evidence in the light

---

[2] The Court notes that not all of these claims correspond to cognizable causes of action.

6

most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Price v. Cushman & Wakefield, Inc., 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted); see also Price, 808 F. Supp. 2d at 685 ("In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial.").

Only disputes relating to material facts—i.e., "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

In reviewing a motion for summary judgment involving a pro se plaintiff, the Court must "read his supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). However, even a pro se plaintiff "must come forward with evidence in admissible form" to defeat a motion for summary judgment, rather than "relying merely on the allegations of a complaint." Saldana v. Local 32B-32J Serv. Emps. Int'l Union, No. 03 Civ. 1853 (DF), 2005 WL 66895, at *2 (S.D.N.Y. Jan. 12, 2005).

### III.   DISCUSSION

Plaintiff asserts a litany of purported claims against defendants in his amended complaint—possibly as many as 13. (See Defs.' Joint Mem. of L. in Supp. of Mot. to Dismiss ("Defs.' Mot.") 3.) All claims relate to the same central factual point: that the photographs taken in July 2008 have been used without permission, causing plaintiff damage.

The releases duly signed by plaintiff's wife and submitted to Zander are entirely dispositive of all possible claims.[3] In addition, the statute of limitations is separately dispositive of plaintiff's only potential claim of invasion of a privacy right. Summary judgment is granted on these bases.

A. The Model Releases

Under New York law, "it is well-settled that a valid release constitutes a complete bar to an action on a claim which is the subject of the release." Allen v.

---

[3] There are various other reasons in addition to those discussed herein which would dispose of plaintiff's claims as a matter of law. However, since the two discussed in this decision are each separately and entirely dispositive, the Court does not recite the others. (See, e.g., Defs.' Mot. 8–19; Defs.' Joint Reply Mem. of L. in Further Supp. of Mot. to Dismiss ("Defs.' Reply") 6–8.)

8

Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991) (alteration, internal quotation marks, and citation omitted); see also Myskina v. Condé Nast Publications, Inc., 386 F. Supp. 2d 409, 414–15 (S.D.N.Y. 2005) (holding that claims arising out of the publication of photographs of the plaintiff were barred because the plaintiff had signed a release form).

Defendants here have produced signed model and property releases that bar plaintiff's lawsuit. The model releases for plaintiff, plaintiff's wife, and plaintiff's child, as well as the property release for plaintiff's property, all state, in extremely broad language, as follows:

> I hereby irrevocably grant to Peter Zander, Photographer, the absolute and unconditional, worldwide right, in perpetuity, without right to any further payment, to use, re-use, transmit, display, sell, license, copyright, and publish [the image] in any photographs, images, recording, . . . or illustrations . . . without restriction, in any and all media now known, or hereafter invented, including without limitation, art, advertising, stock photography, . . . digital or electronic media, print, broadcast, Internet, promotions, commercial and non-commercial use, or for any other purpose throughout the world.

(De Fries Decl. Ex. A.) The capacious language of those releases precludes plaintiff from filing any lawsuit based on defendants' use of the images in question after the date on which those releases were signed.

Plaintiff contests the validity and authenticity of the releases. However, while plaintiff repeatedly accuses defendants of "forgery," he presents no facts to support that statement. His real objection appears to be that his wife signed the releases, and that they are a "forgery" because they do not contain his signature. (De Fries Letter 4.) As stated, in an earlier submission, plaintiff also averred that

the releases are forged because the date on the releases—October 30, 2008—differs from the July 2008 shoot date, and because the date on which the electronic files were created was June 1, 2010. (Id. 5; see also Am. Compl. ¶ 12.) However, these facts are both irrelevant to the authenticity of the releases and completely consistent with the testimony of plaintiff's wife and Zander, who both acknowledge that plaintiff's wife signed the releases, not plaintiff. (De Fries Decl. ¶ 9–12; Zander Decl. ¶ 5–6.) Plaintiff's and defendants' evidence thus all points toward the same timeline: the photo shoot occurred in July 2008; plaintiff's wife, not plaintiff, signed the releases on October 30, 2008; the digital files containing the releases were created on June 1, 2010; and defendants produced the releases to plaintiff in May 2011.[4]

The record before the Court therefore gives rise to no inference that any fraud or forgery occurred here; there is no "genuine issue" as to whether these releases are valid and binding on plaintiff. See Celotex, 477 U.S. at 317. Plaintiff attempts to sidestep the factual evidence supporting the validity of the releases by repeatedly and baldly claiming that they are "forged" and not "obtained legally in any way, shape or form." (See De Fries Letter 1, 4–5.) What he is stating is that his wife's signature is not real and was not lawfully affixed to the forms, a proposition for which he has provided no support and is directly contradicted by his wife herself. (De Fries Decl. ¶ 11.) Plaintiff's bald assertions of "forgery" do not constitute factual evidence sufficient to survive summary judgment; his assertion is

---

[4] The model releases bar plaintiff's claims here although plaintiff's wife signed them on October 30, 2008, several months after the photo shoot occurred. Plaintiff does not allege that any photographs were available online before that date. (See Am. Compl. ¶ 6.)

a conclusory statement for which plaintiff provides no "affirmative and specific evidence." Price, 808 F. Supp. 2d at 865. "Mere speculation or conjecture" and "conclusory allegations or denials," without facts to support them, are insufficient to overcome a motion for summary judgment. See Hicks, 593 F.3d at 166.[5]

Nonetheless, the Court construes plaintiff's submissions liberally, as it must, and reads them in part to dispute whether plaintiff can be bound by releases that he did not himself sign. (See De Fries Letter 5 (noting that "the signature on the [release] is not my signature").) Plaintiff is indeed bound by those releases under New York agency and family law. In general, an agent's authority to enter into an agreement on behalf of a principal may be implied rather than express, so long as "the agent may reasonably infer from the words or conduct of the principal that the principal has consented to the agent's performance of a particular act." Minskoff v. American Exp. Travel Related Servs. Co., 98 F.3d 703, 708 (2d Cir. 1996) (citing Rest. 2d Agency § 7 cmt. b). In the specific context of marriage, "[i]mplied agency may create liability for a spouse when the circumstances of a transaction raise the presumption that one spouse has either the authority to bind the other spouse or the authority to enter into contracts . . . on behalf of the other spouse." Jones-Soderman v. Mazwey, No. 09 Civ. 3185 (SCR), 2010 WL 54759, at *4 (S.D.N.Y. Jan. 6, 2010) (citing 45 N.Y. Jur. 2d Domestic Relations § 247; 41 Am. Jur. 2d Husband

---

[5] The Court could also construe plaintiff's claim that the model releases are fraudulent as a factual allegation that no releases existed at all prior to the time when defendants produced them to plaintiff, and that defendants created them—forged signature and all—in defense to plaintiff's lawsuit. However, such an allegation is so contrary to the weight of the evidence, including plaintiff's wife and Zander's sworn affidavits, that the Court may disregard it, even on summary judgment. See Jeffreys, 426 F.3d at 551 (explaining that a district court may disregard evidence, even on summary judgment, when "no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in [plaintiff's] complaint").

and Wife § 208 (explaining that an individual may be liable for the actions of his spouse through "actual participation, either actively or by express or implied instigation, authorization, or ratification")).

The circumstances of the instant case suffice to indicate plaintiff's consent at the time under a theory of implied agency. Plaintiff's wife declared under oath that she discussed the releases with her husband and that he gave her permission to sign them due to differences in the couple's personal schedules and plaintiff's lack of availability. (De Fries Decl. ¶ 11.) While plaintiff does state that he was not "presented with the Model Release forms," he does not dispute his wife's specific statements that she discussed the releases with Zander, that she discussed them with plaintiff, and that she signed them with his permission. (See De Fries Letter 4.)

Again liberally interpreting plaintiff's submissions, the Court construes plaintiff to dispute that he in fact gave permission to his wife to sign the releases. (See De Fries Letter 4 (stating that the model releases were not "obtained legally in any way").) Agency law, however, looks to the perspective of the <u>agent</u> in determining whether implied authority existed, not the perspective of the principal. See <u>Peoples Westchester Sav. Bank v. Ganc</u>, 705 F. Supp. 164 (S.D.N.Y. 1989) ("To prove that an agency relationship exists, a <u>third party</u> must demonstrate that the principal delegated responsibilities to the agent.") (emphasis added). Here, even assuming that plaintiff disputes that he gave permission to his wife, defendant Zander had every right and reason to rely on them as valid and binding—and

12

plaintiff's wife's declaration makes clear that De Fries provided her with explicit permission. (De Fries Decl. ¶ 11.) Thus, as a matter of law, the model releases, though signed by plaintiff's wife, are binding on plaintiff.

For these reasons, the model and property releases, which are both valid documents and binding on plaintiff himself, bar all of plaintiff's claims arising from use of the photographs after October 30, 2008. See Allen, 945 F.2d at 44; Myskina, 386 F. Supp. 2d at 414. Those releases suffice for the Court to grant summary judgment to defendants on all counts.

B. The Statute of Limitations

Though the model releases are dispositive of all possible claims in this case, in the interest of liberally construing and fairly considering his amended complaint, the Court further considers plaintiff's principal actual claim of invasion of a privacy right. That claim is time-barred.

While plaintiff's amended complaint focused primarily on copyright infringement, it alleges none of the necessary factual predicates to support such a claim—such as a copyright, for instance. (See Jan. 10, 2013 Order, ECF No. 18; Defs.' Mot 9–10 (citing Intimo, Inc. v. Briefly Stated, Inc., 948 F. Supp. 314, 317 (S.D.N.Y. 1996).)[6] Rather, from the outset, plaintiff's principal claim has always appeared to the Court to be an invasion of the right of privacy under the New York Civil Rights Law. The Court so informed plaintiff during the very first conference in this matter. Plaintiff's opposition confirms that his central claims are those for

---

[6] Plaintiff conceded as much in his opposition to defendants' motion to dismiss, where he stated that he does not hold the copyright to the photos in question. (See Pl.'s Reply to Defs.' Joint Mem. ("Pl.'s Opp.") 9.)

13

"invasion of the right of publicity and invasion of the right of privacy." (Pl.'s Opp. 1.)

Any such claim, however, is time-barred. All claims involving the right to privacy or publicity must proceed under the statutory cause of action created by N.Y. Civ. Rights Law §§ 50–51. See Pirone v. MacMillan, Inc., 894 F.2d 579, 586 (2d Cir. 1990) ("New York courts have indicated clearly that the Civil Rights Law preempts any common law right of publicity action . . . ."). The statute of limitations for this type of action is one year. N.Y. C.P.L.R. § 215(3); Zoll v. Jordache Enters., Inc., No. 01 Civ. 1339 (CSH), 2002 WL 31873461, at *7 (S.D.N.Y. Dec. 24, 2002).

Here, plaintiff admits that he learned that the photographs at issue in this case were publicly accessible at least as early as March 20, 2011. (Am. Compl. ¶ 6.) Plaintiff filed his initial complaint on July 3, 2012, more than one year later. (ECF No. 1.) Therefore, plaintiff's complaint is time-barred, and must be dismissed. See Reece v. Marc Ecko Unltd., et al., No. 10 Civ. 02901 (JSR) (DF), 2011 WL 4112071, at *14 (recommending that a right-of-privacy claim be dismissed on statute-of-limitations grounds).[7]

Accordingly, defendants are entitled to summary judgment as to plaintiff's allegation of an invasion of the right of privacy.

---

[7] The Court need not reach other equally dispositive grounds to dismiss plaintiff's claim for the invasion of the right of privacy or publicity. (See Defs.' Reply 4.)

14

IV.     CONCLUSION

For these reasons, defendant's motion for summary judgment is GRANTED. The Clerk of Court is directed to close the motion at ECF No. 39 and to terminate this action.

SO ORDERED.

Dated:     New York, New York
           November 7, 2013

*[signature]*

_____
KATHERINE B. FORREST
United States District Judge

CC:
Mr. Roland J. De Fries
2656 Torringford Street
Torrington, CT 06790
PRO SE